IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:13-CV-37-D

| | |
|---|---|
| MATTHEW JAMES SMITH, )<br>    Plaintiff, )<br>)<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security, )<br>)<br>    Defendant. ) | **MEMORANDUM AND<br>RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-25, DE-27] pursuant to Fed. R. Civ. P. 12(c). Plaintiff Matthew James Smith ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be granted, and the final decision of the Commissioner be upheld.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a Title II period of disability and DIB on January 8, 2010. (R. 66, 179-80.) Claimant also filed an application for Title XVI SSI on January 21, 2010. (R. 66, 181-87.) Both applications allege disability beginning October 13, 2009. (R. 66, 179, 181.) Both claims were denied initially and upon reconsideration. (R. 66, 123-32, 133-44.) A hearing before Administrative Law Judge Lisa R. Hall ("ALJ") was held on July 13,

2011, at which Claimant was unrepresented and a witness and a vocational expert ("VE") appeared and testified. (R. 79-122.) On December 8, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 63-78.) On April 11, 2013, the Appeals Council denied Claimant's request for review. (R. 1-5.) Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision denying disability benefits under the Social Security Act, 42 U.S.C. §§ 301 *et seq.*, ("Act') is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "'In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner].'" *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

In this case, Claimant alleges that the ALJ erred by selectively accepting part of a consultative examiner's report while rejecting the rest. (Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 2-3.)

## FACTUAL HISTORY

I.  **ALJ's Findings**

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 68.) Next, the ALJ determined Claimant had the following severe impairments: attention-deficit hyperactivity disorder ("ADHD") and learning disorder. (*Id*.) The ALJ found that Claimant suffered from no nonsevere impairments. (*Id*.) At step three, the ALJ concluded that Claimant's impairments were not severe enough, either individually

3

or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a full range of work at all exertional levels. (R. 68-72.) The ALJ also determined that Claimant should be "limited to simple, routine, repetitive tasks; [is] unable to do production or fast-paced work; and cannot manage sustained contact with the general public." (R. 68.) In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 69-72.)

At step four, the ALJ concluded Claimant did not have any past relevant work. (R. 73.) At step five, however, upon considering Claimant's age, education, work experience and RFC, the ALJ determined that Claimant is capable of adjusting to the demands of employment opportunities that exist in significant numbers in the national economy. (R. 73-74.)

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was twenty-one years old and unemployed. (R. 86; 88). Claimant is a high school graduate. (R. 87-88.) Claimant was last employed with R&B Cleaning Service, where his duties included helping his mother clean office buildings. (R. 88-89.) Claimant also worked briefly in a placement position during vocational rehabilitation, but Claimant clashed with a supervisor and did not tolerate the experience well. (R. 119.)

Claimant explained how his medical condition of ADHD supports his disability claim and his inability to work full-time. Claimant testified that his condition prevents him from focusing even on the most simple tasks. (R. 89.) Claimant does not have a driver's license because he does not feel he is able to concentrate on the road adequately enough to pass the driving test. (R.

4

87.) At his last job as a building cleaner, Claimant stated that he had trouble focusing on the job duties. (R. 88-89.) Even when engaged in a mundane activity such as playing a video game, Claimant testified that the longest he could focus would be between fifteen and twenty minutes. (R. 89.) Claimant estimates that the longest he could focus on one thing is about thirty minutes. (R. 90.) While in high school, Claimant was enrolled in both regular and special-needs classes, which offered him specific guidance on homework assignments. (R. 87-88.)

Claimant also described an incident where his legs were run over by a car when he was four years old. (R. 90.) Since that time, stated Claimant, he has experienced trouble with pain in his legs and back. (*Id.*) As a result of the condition, Claimant estimates that he can walk as far as a neighborhood store on his block without experiencing pain and can sit for up to forty-five minutes at one time before his back begins to hurt. (*Id.*)

Claimant typically wakes up around 9:30 or 10:00 a.m. (R. 91.) He prepares breakfast for himself and generally walks his family's two dogs. (*Id.*) He regularly vacuums the family residence, washes dishes in the sink, and watches TV. (*Id.*) He has three or four close friends who he visits regularly. (R. 91-92.) He is interested in culinary arts and video game design but does not think he has the focus to maintain employment in either sector. (R. 92-93.)

### III. Witness' Testimony at the Administrative Hearing

Tammy Holigrocki, Claimant's mother, testified as a witness at the administrative hearing. (R. 93-110, 111-18.) Ms. Holigrocki stated that Claimant has not been on medication for his ADHD for more than two years for financial reasons. (R. 94.) Even when treated with medication, Claimant's mother noted that instructions need to be repeated multiple times in order for Claimant to understand and that Claimant still gets very frustrated. (R. 95.) Ms. Holigrocki testified that Claimant took an extra year to graduate high school because of trouble completing a

senior project. (R. 96.) Ms. Holigrocki also described how Claimant's outbursts of anger had caused him to harm himself and made it difficult for him to make new friends. (R. 96-97.)

Ms. Holigrocki also described Claimant's trouble focusing on tasks. While working with him as a cleaner, she constantly had to monitor his progress and direct him to perform duties in the proper manner. (R. 102-03.) She also detailed how Claimant's inability to maintain personal hygiene had resulted in rotten teeth that needed pulling. (R. 99.) Ms. Holigrocki also testified about how Claimant would often repeat himself during brief conversations. (R. 104.) When she would leave him a list of chores to do while she was at work, Claimant would sometimes accomplish them but more often required her supervision when she returned home. (R. 105.) Ms. Holigrocki noted incidents where Claimant would abruptly change his mind from performing one particular activity to something completely different. (R. 108-09.) She stated that Claimant cannot cook for himself or manage money properly. (R. 107-08, 112.)

**IV.     Vocational Expert's Testimony at the Administrative Hearing**

Paula Day testified as a VE at the administrative hearing. (R. 109-11, 118-21.) The ALJ asked the VE to assume a younger individual with a high school education and no prior work experience. Assuming further that the individual has the physical capacity to perform work at all exertional levels but is limited to simple, routine and repetitive tasks and is unable to perform production or fast-paced work or to have sustained contact with the general public, the ALJ asked whether there were jobs that the individual could perform. (R. 110.) The VE responded that there are jobs that would accommodate those limitations and gave as examples laundry worker (DOT # 361.689-018); kitchen helper (DOT # 318.687-010); and hospital cleaner (DOT # 323.687-010). (R. 110-11.) The ALJ then expanded upon the hypothetical and asked the VE whether an individual who is unable to maintain attention for more than fifteen to thirty minute

6

intervals and would need a break every thirty minutes would be able to perform those jobs. (R. 111.) The VE responded that such an individual would not only be precluded from maintaining employment in the jobs identified but would likely be unable to sustain any employment. (*Id*.)

The VE also noted that vocational rehabilitation services would be beneficial to Claimant. (R. 118.) Such agencies, explained the VE, are able to cope with medical problems and to train individuals who have been declared disabled. (R. 118-19.) She encouraged Claimant's mother to try another program, despite Claimant's prior unsuccessful experience, because of the benefits they could offer to someone with Claimant's impairments. (R. 119-21.)

## **DISCUSSION**

Claimant's sole assignment of error is to the ALJ's decision to accept some of the limitations expressed in the consultative examiner's medical opinion while finding that others were not supported by the record. (Pl.'s Mem. at 2-3.) The undersigned finds no error in the ALJ's rationale and finds that the weight assigned to the opinion is supported by substantial evidence.

Unless the ALJ assigns controlling weight to a treating physician, he or she must evaluate all medical opinions in the record in accordance with the following factors: (1) whether or not the source examined the claimant; (2) the length of treatment relationship and the frequency of examinations; (3) the nature and extent of the treatment relationship; (4) the evidentiary support for the physician's opinion; (5) the consistency of the opinion with the record as a whole; (6) whether the physician is a specialist in the field in which the opinion is rendered; and (7) any other relevant factors. 20 C.F.R. §§ 404.1527(c)(2)–(5), 416.927(c)(2)-(5); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011). An ALJ is permitted to credit portions of a physician's opinion that are supported by the record while assigning no weight to those portions

7

lacking evidentiary support, provided that the ALJ articulates reasons for doing so that are supported by the record. *Dunn v. Colvin*, 973 F. Supp. 2d 630, 638-40 (E.D. Va. Sept. 19, 2013) (finding that the ALJ's decision to disregard the limitations given in the treating physician's opinion, while crediting other findings, was supported by substantial evidence); *see also Rhodes v. Massanari*, 8 F. App'x 741, 742 (9th Cir. 2001) (remanding where the ALJ failed to articulate a basis for assigning partial weight to the opinions of one health care provider); *Cain v. Barnhart*, 197 F. App'x 531, 533-34 (8th Cir. 2006) (affirming the ALJ's decision to assign partial weight to a physician's opinion where three specific reasons, supported by substantial evidence, were identified in the opinion).

In evaluating the opinion of Dr. Jerome Albert, a consultative examiner, the ALJ assigned the opinion some weight, stating:

> The undersigned has also considered the opinion of Dr. Albert, and gives weight to his opinion that the claimant is able to understand, retain, and follow simple directions; however, the undersigned gives no weight to the remainder of Dr. Albert's opinions, including the assertions that the claimant would have difficulty sustaining attention to perform these tasks full time, has difficulty getting along with fellow workers and supervisors, and would have difficulty tolerating the stress and pressures associated with day-to-day work activities. The undersigned accords these opinions no weight as they are inconsistent with Dr. Albert's own evaluation of the claimant and the longitudinal evidence of record. During Dr. Albert's evaluation, the claimant reported that he does not get frustrated as easily as he used to, and also had multiple friends. In addition, the claimant reported being able to play video games, play on the computer, and help around the house. Further, Dr. Albert noted that his activity level was within normal limits and that he was polite.

(R. 72, 414-18.)

Without citing any relevant authority, Claimant argues that the ALJ's assignment of partial weight to Dr. Albert's opinion was at odds with the regulations. (Pl.'s Mem. at 2-3.) Essentially,

8

Claimant contends that the ALJ's decision to credit only a portion of Dr. Albert's opinion while rejecting others is tantamount to the ALJ impermissibly substituting her personal, lay opinion for that of the medical experts.

Contrary to Claimant's argument, such an "all or nothing" approach is not compelled by the regulations. An ALJ's decision to assign weight to portions of a physician's opinion while declining to credit others is permissible, provided that the ALJ articulates reasons for doing so and those reasons are supported by substantial evidence. *Dunn*, 973 F. Supp. 2d at 638-40; *Rhodes*, 8 F. App'x at 742; *Cain*, 197 F. App'x at 533-34. The ALJ also noted considerations dictated by the factors -- that Dr. Albert was a consultative examiner and that Claimant saw Dr. Albert once in March 2010. (R. 70); 20 C.F.R. §§ 404.1527(c)(2)–(5), 416.927(c)(2)-(5). The ALJ gave two primary reasons for declining to credit Dr. Albert's limitations, both dealing with the supportability and consistency of the opinion in light of the record: (1) that the restrictions were inconsistent with his own observational notes; and (2) that the record failed to support the restrictions. (R. 72); 20 C.F.R. §§ 404.1527(c)(3)–(4), 416.927(c)(3)-(4).

The ALJ's observation that Dr. Albert's restrictions were at odds with his treatment notes is supported by substantial evidence. First, Claimant described to Dr. Albert having multiple friends with whom he regularly spent time, which is at odds with the observation that Claimant would have difficulty relating with others, such as supervisors and coworkers. (R. 72, 416.) Dr. Albert also noted Claimant's polite demeanor, further indicating an ability to relate to others in a workplace setting. (R. 72, 415.) Next, Claimant admitted to Dr. Albert that he was able to perform work around the house, use a computer, and play video games, indicating that Claimant could focus on tasks to the extent necessary to hold a job. (R. 72, 416.) Finally, Claimant's normal activity level indicates the ability to cope with the physical stresses of employment. (R.

9

72, 415.) These observations from Dr. Albert's treatment notes conflict with his limitations, as pointed out by the ALJ, and thus constitute substantial evidence supporting the ALJ's assessment.

Further, substantial evidence from the record contradicts Dr. Albert's findings. First, both Claimant and his stepfather admitted that Claimant's symptoms tend to be controlled under the influence of medication. (R. 71, 416 (Claimant's stepfather says that Adderall "worked" and made Claimant less anxious and less verbally aggressive), 435 (Claimant states that he sometimes has problems with concentration while doing homework but that those problems are remedied when he takes Adderall).) The record reflects that while taking Adderall , Claimant was able to (i) graduate from high school while enrolled primarily in regular classes (R. 87-88, 382-84, 388-89), (ii) successfully complete a senior project (R. 389), and (iii) work hard in school and regularly attend class (R. 289, 383). These successes contradict Dr. Albert's findings that Claimant does not have the attention for and is unable to cope with the stresses of work on a full-time basis. Claimant's admitted activities, such as preparing breakfast and caring for dogs (R. 91), playing video games, (R. 92-93, 416), and performing chores around the house (R. 91-92), are likewise inconsistent with a complete inability to follow instructions or to pay attention to tasks. The ALJ also noted that vocational testing revealed that Claimant "had a good ability to learn, with a preference for visual information processing." (R. 69-71, 397-401, 435-39). These findings show that Claimant is able to take simple instructions and learn tasks in the proper environment, which the ALJ accounted for in the RFC assessment. (R. 68.) Overall, the record contains substantial evidence supporting the ALJ's determination that not all of Dr. Albert's opinions were supported by the record as a whole. As such, the finding was without error and was a proper evaluation of Dr. Albert's opinion.

10

Case 2:13-cv-00037-D   Document 31   Filed 08/07/14   Page 10 of 11

## **CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-25] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-27] be GRANTED and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 7th day of August 2014.

*Kimberly A. Swank*
KIMBERLY A. SWANK
United States Magistrate Judge